## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **JAMIE A. REINESTO,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-CV-611-P** |
| | § | |
| **COMMISSIONER, SOCIAL SECURITY** | § | |
| **ADMINISTRATION,** | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation

of the United States Magistrate are as follows:

## FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Jamie A. Reinesto ("Reinesto") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for disability insurance benefits ("DIB")

under Title II and supplemental security income ("SSI") under Title XVI of the Social Security

Act (the "SSA"). Reinesto protectively filed both her DIB and SSI applications on October 16,

2019, alleging that her disability began on November 1, 2018. (Transcript ("Tr.") 110; *see* Tr.

394-400.) Reinesto's applications were both denied initially and on reconsideration. (Tr. 110;

*see* Tr. 221-300) On July 7, 2021, the ALJ held a hearing, and on September 27, 2021, the ALJ

issued a decision finding that Reinesto was not disabled within the meaning of the SSA. (Tr.

1

107-129; *see* Tr. 190-220.) The Appeals Council denied Reinesto's request for review on May 23, 2022, leaving the ALJ's decision to stand as the final decision of the Commissioner in Reinesto's case. (Tr. 1-6.) Reinesto subsequently filed this civil action under 42 U.S.C. Sec. 405(g), seeking review of the ALJ's decision.

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.

2

20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[1]

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

### III.    ISSUES

In her brief, Reinesto presents the following issues:

1. Whether the ALJ properly evaluated Reinesto's severe non-epileptic seizure disorder;

2. Whether the ALJ considered all of Reinesto's functional limitations in determining her RFC;

3. Whether the ALJ substituted her own medical opinion to determine the effect of Reinesto's non-epileptic seizure disorder; and,

4. Whether the ALJ properly supported her credibility determination.

(Plaintiff's Brief ("Pl. 's Br.") at 1-2, 9-21.)

### IV.    ALJ DECISION

In her September 27, 2021 decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 110-123.) The ALJ noted that Reinesto met the insured status requirements of the SSA through December 31, 2021. (Tr. 112.) The ALJ then found that Reinesto had not engaged in substantial gainful activity since November 1, 2018, the alleged onset date. (Tr. 112.) The ALJ next found that Reinesto had the following "severe" impairments: "a non-epileptic seizure disorder; depression; a generalized anxiety disorder; and post-traumatic stress disorder ('PTSD')." (Tr. 113.) Next, the ALJ opined that Reinesto "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 114 (emphasis omitted).) As to Reinesto's RFC, the ALJ stated:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the work involves no climbing of ladders, ropes, or scaffolds, or working at unprotected heights, or around dangerous, unprotected major manufacturing machinery. The claimant is unable to operate a motor vehicle. She can understand, remember, and carry out more than simple but less than complex tasks that can be learned and mastered within six months' time. The claimant is able to work in proximity to others, tolerating occasional interaction with coworkers and supervisors. At such

4

levels, she has been able to maintain concentration, persistence, and pace; make routine, work-related decisions; plan and set goals; adapt to routine workplace changes; travel; and recognize and avoid ordinary workplace hazards.

(Tr. 116 (emphasis and footnote omitted).)  Next, relying on Reinesto's statements about the intensity, persistence, and limiting effects of her symptoms, the testimony of a vocational expert ("VE"), and medical opinions, the ALJ found that Reinesto was "capable of performing past relevant work as a "Horticultural Worker" since such work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965)." (Tr. 120 (emphasis omitted).)  Consequently, the ALJ determined that Reinesto was not disabled.  (Tr. 122.)[2]

## V.    DISCUSSION

### A.    Evaluation of Reinesto's Non-Epileptic Seizure Disorder

In her brief, Reinesto first argues that the ALJ erred by evaluating her severe impairment of non-epileptic seizure disorder using the criteria for a neurological impairment instead of using the criteria for a mental impairment.  (Pl.'s Br. at 9-10; Plaintiff's Reply ("Pl.'s Reply") at 1.) Reinesto notes that, while the ALJ considered whether she met or equaled sections 12.04, 12.06, and 12.15 of the Listings, the ALJ failed to consider whether her "pseudoseizures" met or equaled the criteria in section 12.07 of the Listings.  (Pl.'s Br. at 9-10.)  Reinesto claims that such failure was error.  (Pl.'s Br. at 10.)

To obtain a disability determination at Step Three, a claimant must show that her impairments meet or equal one of the impairments in the Listing.    20 C.F.R. § 404.1520(a)(4)(iii).  As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled.  Social Security Ruling ("SSR") 96-6p, 1996

---

[2] The ALJ also made an alternative findings at Step Five that there were other jobs that exist in significant numbers in the national economy that Reinesto could also perform.  (Tr. 121-22.)

WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion, because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record about the impairments, including findings from one or more medical or psychological consultants designated by the Commissioner. 20 C.F.R. § 404.1526(c).[3] Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

The claimant has the burden of proving that her impairment or combination of impairments meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), *superseded by statute on other grounds as stated in McCloskey v. Colvin*, No. CV 15-5223-SP, 2016 WL 5745077 at *7 (D. Cal. Sept. 30, 2016); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make

---

[3] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 404.1526(c).

6

meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-cv-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).   "However, before the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless." *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected.").   To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, Reinesto, as set forth above, argues that the ALJ erred by failing to consider whether her severe impairment of non-epileptic seizure disorder (pseudoseizures) met or equaled Listing 12.07. (*See* Pl.'s Br. at 8-10.) As relevant here, section 12.07 of the Listing, which deals with somatic symptoms and related disorders, states:

A. Medical documentation of *one* or more of the following:

1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
3. Preoccupation with having or acquiring a serious illness without significant symptoms present.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.07.

While the ALJ did not specifically analyze whether Reinesto met section 12.07 of the Listing, the ALJ did discuss whether Reinesto's mental impairments met sections 12.04, 12.06, and 12.15 of the Listing. (Tr. 13-15.) In deciding that Reinesto did not meet these sections, the ALJ stated that "[t]he claimant's non-epileptic seizure disorder is evaluated under the 12.00 listings" and set forth her analysis under "Paragraph B," finding that Reinesto had: (1) a mild limitation in understanding, remembering, or applying information; (2) a moderate limitation in interacting with others; (3) a mild limitation in concentrating, persisting, or maintaining pace; and (4) a moderate limitation in adapting or managing oneself. (Tr. 114-15.)

As set forth above, Reinesto has the burden of proving that her impairment or combination of impairments meets or equals a listing. *See Zebley*, 493 U.S. at 531, *superseded by statute on other grounds as stated in McCloskey*, 2016 WL 5745077 at *7.[4] Reinesto has failed to meet this burden as she has not provided evidence that the ALJ erred in her Paragraph B analysis, finding that Reinesto did not have more than a moderate limitation in each of the four areas of mental functioning. Consequently, Reinesto has failed to show that she had an extreme limitation of one, or marked limitation of two, of the four areas of mental functioning, which is required in order to meet section 12.07 of the Listing. Thus, any error by the ALJ in failing to discuss section 12.07 would be harmless and remand is not required. *See Mcgowan v. Saul*, No. 4:20-CV-282, 2021 WL 799325, at *4 (S.D. Tex. Jan. 6, 2021) ("Because there is no indication the failure [of ALJ to specifically reference both listings in relation to paragraphs B and C] affected [Plaintiff's] substantial rights, any error was harmless"); *Saleeba v. Berryhill*, No. 17-CV-3538, 2019 WL 1386817, at *5 (S.D. Tex. Mar. 5, 2019) (finding ALJ's failure to mention

---

[4] *See also Hodges v. Colvin*, No. 4:15-CV-506-BL, 2016 WL 5957608, at *3 (N.D. Tex. Oct. 12, 2016) ("Hodges argues she met the criteria set out for an impairment listed at § 12.07 in appendix 1 of the Social Security regulations and the ALJ therefore erred by failing to discuss that listing in the context of her impairments . . . As noted above, a claimant bears the burden of proof at step three, and the ALJ's decision must be affirmed if supported by anything more significant than a scintilla of evidence.")

Listing 12.02 harmless because the paragraph B and C criteria for Listings 12.03 and 12.04—which the ALJ did discuss—apply equally to Listing 12.02).

## B.    Consideration of All of Reinesto's Functional Limitations

Next, Reinesto argues that the ALJ failed to consider all of her functional limitations when making the RFC determination. (Pl.'s Br. at 10.) Reinesto contends, in essence, that the ALJ failed to adequately consider the combined effect of all of Reinesto's severe and non-severe limitations in making the RFC determination, that the decision was not supported with substantial evidence, and that these are legal errors requiring remand. (Pl.'s Br. at 13-19.) In support of her claims, Reinesto presents what she views as shortcomings in the ALJ's consideration of her functional limitations resulting from her non-epileptic seizure disorder, migraine headaches, carpal tunnel syndrome, and PTSD. (*Id.*)

In this case, the ALJ, as set forth above, found that Reinesto had several severe impairments, including non-epileptic seizure disorder. (Tr. 113.) As to her non-epileptic seizure disorder, the ALJ noted that Reinesto reported "that her seizures include panic attacks, feeling hot, dizziness, and 'seeing stars,'" that she experienced "three-to-four per month," and that "[t]reatment notes describe the claimant's seizures as being with flashing lights in her field of vision, followed by dizziness, a feeling of warmth, convulsions, and loss of consciousness." (Tr. 117.) The ALJ also stated:

> However, the claimant's Adult Function Report states that she is capable of walking up to three miles, as well as lifting up to 20 pounds. She has also been able to spend all day doing laundry, as well as cooking twice daily for one-to-two hours. Her range of motion has consistently been full. The claimant's gait has been normal. Her strength has been intact. She has maintained normal coordination. An MRI of the claimant's brain observed no abnormalities, and an MRI of her cervical spine found only mild osteophyte complex formation from C5 through C7. Neurological testing specifically found the claimant's seizure activity is non-epileptic in nature. She indicated that she exercises frequently.
> The undersigned has specifically considered the frequency of the claimant's seizures in determining whether absenteeism, off-task, or more

9

restrictive environmental and postural limitations than described in the residual functional capacity has been justified.

(Tr. 117-18 (internal citations omitted).)  The ALJ reviewed Reinesto's answers regarding the frequency of seizures in her Seizure Questionnaire as well as in the treatment notes, noting that the frequency of seizures had declined once she began taking the prescribed medication, Keppra. (Tr. 118.)  The ALJ also noted that Reinesto "reported a sensation of disorientation after having a seizure, " experiences panic attacks when having a seizure, and that "stressful environments can trigger seizures." (Tr. 119.)  The ALJ further stated:

> The record indicates that the claimant did not begin treatment for her seizures until May 23, 2019 and did not experience seizures while adhering to her prescription for Keppra until April 2021. From April 2021, the record does not refer to seizures until September 2020, when she had two seizures, and one seizure per month from October through December 2020.  As a result, the evidence of record indicates that the claimant's non-epileptic seizure disorder was controlled by medication though September 2020, and the claimant's allegations that she has experienced between two and four seizures per month throughout the period at issue are not consistent with her statements to healthcare provides. Although she has experienced an increased frequency of seizures after September 2020, she has not sought emergency treatment for a seizure of injuries sustained during a seizure.   The undersigned specifically notes that the claimant experienced approximately one seizure per month and identified the specific date of the seizure from October through December 2020 before complaining of multiple seizures per month beginning in February 2021 without recording the dates of these seizures. Based on the evidence discussed above, the undersigned finds that the claimant has not demonstrated that her alleged increase in the frequency of her seizures during 2021 reflects an increase in the severity of her seizure-related limitations beyond the limitations described in the residual functional capacity capable of persisting, or expecting to persist, for a continuous period of at least twelve months.
>
> Accordingly, the undersigned finds that the claimant has not demonstrated that her physical limitations have been more restrictive than described in the residual functional capacity.

(Tr. 118-19 (internal citations omitted).)

As to Reinesto's migraine headaches, the ALJ reviewed Reinesto's testimony and other information in the record and noted that "[t]reatment notes indicate that the claimant managed

her headaches conservatively with non-prescription medication until November 2020, when she added Topamax to her medication regimen, which subsequently reduced the severity of her migraines." (Tr. 114.) The ALJ stated that, prior to taking Topamax, Reinesto "complained of only two or three migraines per week and that this increase in her symptoms had begun approximately in July 2020." (Tr. 114.) The ALJ ultimately found that Reinesto's impairment of migraine headaches was not a severe impairment as Reinesto "has not demonstrated that her migraines imposed more than a minimal limitation to her ability to perform work activities for a continuous period of at lease twelve months during the period at issue." (Tr. 114.)

As to Reinesto's carpal tunnel syndrome, the ALJ, noting that Reinesto had been diagnosed with and complained of carpal tunnel syndrome, reviewed the results of a nerve conduction study and Reinesto's Adult Function Report, as well as Reinesto's testimony regarding such impairment. (Tr. 113.) The ALJ further noted that Reinesto "did not seek occupational therapy and declined a referral for possible surgical treatment" and that her "range of motion has not been limited." (*Id.*) The ALJ also stated that "the record does not refer to the claimant receiving or seeking any form of more-than-conservative treatment for carpal tunnel syndrome during the period at issue." (Tr. 113.) The ALJ ultimately found that Reinesto's carpal tunnel syndrome was not a severe impairment, finding that Reinesto "has not demonstrated the carpal tunnel syndrome imposed more than a minimal limitation to her ability to perform work activities for a continuous period of at least twelve months." (*Id.*) In addition, the ALJ stated that "even had the claimant's carpal tunnel syndrome been found severe, neither the representative occupations identified at step five nor the past relevant work claimant has been capable of performing at step four require more than frequent manipulation." (Tr. 113.)

Finally, as to Reinesto's PTSD, the ALJ, as set forth above, found that such impairment was severe. (Tr. 113.) The ALJ further stated:

11

> The evidence of record supports finding that the claimant has experienced the mental limitations described in the residual functional capacity. . . . She testified that she experiences panic attacks when having a seizure. She complained of feeling uncomfortable in groups of people and that stressful environments can trigger seizures. The claimant conceded that she neglects her acts of personal care and copes with stress and change poorly. She complained of finding being in groups of people stressful, as well as of being socially isolated, but acknowledged getting along with authority figures. She told her neurologist that the thinks her seizure[s] are triggered by stress.

(Tr. 119 (internal citations omitted).)  The ALJ further stated:

> However, her Adult Function Report states that she has retained the ability to manage her own finances, as well as follow spoken and written instructions. Treatment notes refer to intact memory. The record does not refer to the claimant displaying forgetful behavior during a healthcare appointment during the period at issue. Treatment notes refer to pleasant, cooperative, or appropriate behavior. The claimant has considered her social and interpersonal skills a strength. The record indicates that her concentration has been intact during medical appointments. Her Adult Function Reports states that she is usually capable of concentrating on tasks. The claimant has been able to cook for one-to-two hours daily, as well as spend an entire day doing laundry every other week. Her judgment and insight have been appropriate. She displayed appropriate grooming and hygiene. Treatment notes from early 2019 indicate that she did not need assistance performing her acts of personal care or activities of daily living.

> Accordingly, the undersigned finds that the claimant has not demonstrated that her mental limitations have been more restrictive than described in the residual functional capacity. In particular, the undersigned notes that the claimant's interactive and adaptive limitations are accommodated by limiting the claimant to performing non-strenuous mental tasks, such as those that are simple but less than complex and which involve interacting with supervisors, as mentally strenuous and stress situations have been capable of triggering seizure activity.

(Tr. 119.)

RFC is what an individual can still do despite her limitations.[5]  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-

---

[5] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[6] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making her decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that she did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as

---

[6] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). Moreover, an ALJ does "not err solely because he finds an impairment severe at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC." *Davis v. Comm'r of Soc. Sec.*, No. 4:20-cv-1117-O-BP, 2021 WL 363597, at *3 (N.D. Tex. Feb. 3, 2021) (internal quotations and citations omitted). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

In this case, it is clear that the ALJ was aware of and specifically discussed Reinesto's severe impairments of non-epileptic seizures and PTSD and non-severe impairments of migraine headaches and carpal tunnel syndrome. The ALJ specifically included limitations in the RFC determination to account for all of Reinesto's severe and non-severe impairments that she found affected Reinesto's ability to work and explained why she did not include any additional limitations beyond what was included in the RFC determination for such impairments. As to Reinesto's non-epileptic seizures, the ALJ, as noted above, evaluated specific inconsistencies between Reinesto's testimony and self–reports regarding her seizures and their impact on her life and the medical documentation and treatment notes regarding the infrequency of her seizures during the relevant period and the ability of medication to help control her seizures. (*See, e.g.*, Tr. 114-19.)

In addition, as to Reinesto's migraine headaches, the ALJ noted the discrepancies in the frequency of such headaches as reported by Reinesto compared to the treatment notes, pointed out that Reinesto had managed her migraines with over-the-counter medication until November 2020, and stated that Reinesto had not demonstrated that her migraines imposed more than a minimal limitation to her ability to perform work activities for a continuous period of at least

14

twelve months since she began taking prescription Topamax on October 27, 2020.[7]  (*See* Tr. 114; *see, e.g.*, Tr. 1324-28, 1333-36.)  *See Griego v. Sullivan*, 940 F.2d 942, 945; *Parfait v. Bowen*, 803 F.2d 810, 813-814 (5th Cir. 1986).

Similarly, the ALJ found that Reinesto's carpal tunnel syndrome was not a severe impairment, noting that while she had been diagnosed with carpal tunnel syndrome and wore wrist braces at night, Reinesto had received only conservative treatment for such impairment, did not seek occupational therapy, and declined a referral for possible surgery.  (Tr. 113; *see, e.g.*, Tr. 1324.)  In addition, the ALJ found persuasive the state agency medical consultants' decisions finding that Reinesto had no manipulative limitations.  (Tr. 119; *see* Tr. 229, 242, 267, 287.)  Finally, as to Reinesto's impairment of PTSD, the ALJ found the opinions of the state agency psychological consultants ("SAPCs") persuasive in formulating Reinesto's mental RFC determination.  (Tr. 120.)  The SAPCs, who considered all of Reinesto's mental impairments, including PTSD, found that she was capable of "work of limited complexity but which requires accuracy and attention to detail; cannot work closely with supervisor or coworkers, but can accept supervision and relate to coworkers if contact is not frequent or prolonged," and subject to specific limitations.  (Tr. 120; *see* Tr. 230-31, 240, 243-44, 263, 270-71, 283-84, 290-91.)  The ALJ relied on these findings in making the mental RFC determination.  Because the ALJ specifically referenced, analyzed, and incorporated limitations that were supported by the

---

[7] In the ALJ decision, the ALJ, referencing transcript page 1324, stated that, before beginning Topamax, a prescription migraine headache drug, Reinesto had been suffering from two to three migraines a week, beginning in approximately July 2020.  (Tr. 114.)  The ALJ, citing to transcript pages 1333 and 1355, also noted that, after Reinesto began taking Topamax on October 27, 2020, the severity of her migraines reduced substantially.  (Tr. 114.)  The ALJ then concluded that, as a result, Reinesto "has not demonstrated that her migraines imposed more than a minimal limitation to her ability to perform work activities for a continuous period of at least twelve months during the period at issue."  (Tr. 114.)  While not stated in the most artful and concise manner, a review of the referenced pages, shows that Reinesto, after starting to take Topamax, was only having two migraine headaches every four weeks, a substantial decrease from having two to three migraines a week.  Thus, the ALJ's statement regarding finding Reinesto's migraine headaches as non-severe, appears to be based on the medical records from October 27, 2020, the date Reinesto began taking Topamax and which reduced the number of migraine headaches Reinesto was having, through September 27, 2021, the date of the ALJ's decision and is a period of less than twelve months.

evidence in the record relating to Reinesto's non-severe and severe impairments, the Court concludes that substantial evidence supports the ALJ's RFC determination and remand is not required.

Moreover, to the extent there was any error, it would be harmless error as Reinesto has failed to identify any evidence, beyond her own speculation, indicating how her non-epileptic seizures, migraine headaches, carpal tunnel syndrome, or PTSD actually resulted in any further limitations beyond those found by the ALJ in the RFC determination. *See Mayeux v. Comm'r of Soc. Sec. Admin.*, No. 16-755-EWD, 2018 WL 297588, at *7 (M.D. La. Jan. 4, 2018) ("Plaintiff has failed to identify any evidence [beyond her own speculation] to support a finding that her [severe] obesity actually resulted in limitations precluding sedentary work."). Consequently, remand is not required.

## C.   Alleged Substitution of Medical Opinion

Reinesto also argues that the ALJ substituted her own medical opinion to determine the effect of Reinesto's non-epileptic seizure disorder (or pseudoseizures) on her ability to work.[8] (Pl.'s Br. at 20-21.) Reinesto claims that the SAMCs found that she suffered from "the severe impairment of epilepsy," a neurological impairment, but that the ALJ disagreed, finding that Reinesto instead suffered from non-epileptic seizures, a mental impairment. (Pl.'s Br. at 20 (citing Tr. 226, 239, 263, 283.) According to Reinesto, there is, consequently, no medical opinion in the record as to the severity of her non-epileptic seizure disorder or its effect on her

---

[8] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

ability to perform work-related activities. (Pl.'s Br. at 20.) Reinesto argues that, as a result, the ALJ "substituted her own medical judgment as to the vocationally limiting effects of Reinesto's severe impairment of non-epileptic seizure disorder." (Pl.'s Br. at 20.) Reinesto, citing to *Jess W. v. Saul*, No. 1:18-CV-00173-BU, 2020 WL 6877701, at *17-18 (N.D. Tex. Nov. 3, 2020), *rep. and rec. adopted*, 2020 WL 6873488 (N.D. Tex. Nov. 23, 2020), claims that failure to rely on a medical opinion in determining a plaintiff's RFC warrants remand if such a failure raises doubts as to whether the ALJ might have reached a different conclusion had she fully developed the record. (Pl.'s Br. at 20-21.)

In *Jess W.*, the Court found, *inter alia*, that the ALJ erred and violated the holding of the Fifth Circuit Court of Appeals in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995) because "the record does not contain relevant medical opinion evidence describing the physical effect Plaintiff's epilepsy had on his ability to work for the bulk of the alleged disability period." *Jess W.*, 2020 WL 6877701, at *16-17. In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. The Fifth Circuit, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[9] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.[10] *Id.* at 557–58. The Fifth Circuit rejected the injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's

---

[9] "The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Id.*

[10] "While *Ripley* itself remains precedent, its emphasis on treating physicians' opinions no longer holds sway." *Vasquez v. Comm'r of Soc. Sec.*, No. 7:21-cv-00028-BP, 2022 WL 2975471, at *4 (June 30, 2022) (citing *Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021) (discussing 20 C.F.R. §404.1520c)).

condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart,* 2005 WL 1994289, at *7 (5th Cir. 2005) (slip op.). Contrary to the facts in *Ripley,* and *Jess W.,* the SAMCs in this case set forth RFC opinions assessing the effects of Reinesto's seizures, as well as her impairments, on her ability to work. In fact, the SAMCs specifically found that her seizures resulted in her never being able to climb ladders, ropes, or scaffolds and to avoid all exposure to hazards such as machinery and heights. (*See, e.g.,* Tr. 226, 228-30, 239, 242-43, 263, 267-68, 283, 287-88.) Moreover, the SAMCs also considered her mental impairments, including her history of abuse, anxiety, and diagnosis of PTSD, to find that Reinesto was also "capable of work of limited complexity but which requires accuracy and attention to detail; cannot work closely with supervisors or coworkers, can accept supervision and relate to coworkers if contact is not frequent or prolonged." (Tr. 244; *see also* Tr. 231, 271, 291.) While the ALJ determined that Reinesto suffered from non-epileptic seizures rather than epilepsy, she found the SAMC opinions persuasive and relied an those opinions when making the RFC determination that, *inter alia,* included limitations that Reinesto: (1) can never climb ladders, ropes, or scaffolds, or work "at unprotected heights, or around dangerous, unprotected major manufacturing machinery;" (2) "can understand, remember, and carry out more than simple but less than complex tasks;" and (3) "can tolerate occasional interaction with coworkers and supervisors." (Tr. 116.)

Regarding Plaintiff's argument that the ALJ erred in formulating RFC determination as "there is no medical opinion in the record as to the severity of the Plaintiff's pseudo seizures or

18

non-epileptic seizure disorder [(as compared to epileptic seizures)], or its effect upon the Plaintiff's ability to perform work-related activities. (Pl.'s Br. at 20). It is clear that the SAMCs, while they may have mislabeled the actual type of seizures Reinesto was experiencing, did consider the effects of such seizures on Reinesto's ability to work. While the underlying causes of epileptic seizures and non-epileptic seizures are different, non-epileptic seizures resemble epileptic seizures in terms of the physical signs. *See Delgado v. Colvin*, No. 3:12-CV-53 JVB, 2013 WL 2431160, at *14 (N.D. Ind. June 4, 2013 ("Pseudoseizures resemble epileptic seizures, even though their causes are different."); *Boiles v. Barnhart*, 395 F.3d 421, 422 (7th Cir. 2005) (stating that nonepileptic seizures or pseudoseizures "resemble epileptic seizures but are not attributable to epilepsy or abnormal electric activity in the brain"). "Pseudoseizures may be generalized convulsions (similar to 'grand-mal' epileptic seizures) that are characterized by falling and shaking" or "are similar to 'petit mal' or 'complex partial' epileptic seizures that are limited to temporary loss of attention, 'staring into space,' or 'dozing off.'" *Id.* Moreover, the SAMCs did consider Reinesto's history of PTSD, anxiety, and abuse in formulating their RFC determinations which the ALJ relied on. Because non-epileptic seizures are "attributed to an underlying psychological disturbance," the SAMCs RFC formulation, which accounted for Reinesto's physical limitations resulting from seizures and the mental limitations caused by events that were the root of her non-epileptic seizures, were valid medical opinions that the ALJ could and did rely on in making the RFC determination. Because there is substantial evidence in the record that supports the ALJ's RFC determination, remand is not required as to this issue.

## C.    <u>Evidence Supporting Credibility Determination</u>

Finally, Reinesto argues that the ALJ did not refer to any evidence to support the ALJ's findings that "the Plaintiff's statements as to her symptoms and their limiting effect were only partially consistent with the evidence of record." (Pl.'s Br. at 21.) Specifically, Reinesto claims

that the "ALJ appears to have relied upon changes in the frequency of seizure episodes and migraine episodes as a basis for questioning the Plaintiff's credibility." (Pl.'s Br. at 22.) Reinesto argues that, because "the ALJ has not referred to any evidence which would establish that the Plaintiff does not experience the symptoms she described, nor the functionally limiting effect of such symptoms," the ALJ's credibility finding is erroneous. (*Id.*) Reinesto claims that, "[h]ad the ALJ credited the Plaintiff's statements as to the effects of her seizures and her migraine episodes, the ALJ would have credited the ALJ testimony that absences from work of two days per month would preclude full-time competitive employment." (Pl.'s Br. at 22.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3P, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Once he finds impairment, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3P, 2017 WL 5180304, at *4. A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that she is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. §§ 404.1529, 416.929.

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of both the objective medical and other evidence in the record, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 16-3P, 2017 WL 5180304, at *10-11. An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence

20

shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

In evaluating Reinesto's credibility, the ALJ first set out the standard for evaluating credibility. (Tr. 116-17.) Then, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are only partially consistent with the evidence of record and do not support a finding of disability, as discussed below.

(Tr. 117.) In making this determination, the ALJ carefully identified and analyzed specific evidence that she found contradicted Plaintiff's subjective symptom complaints. (*See* Tr. 117-20.)

Contrary to Plaintiff's claims and as spelled out in Defendant's brief, the ALJ did not fail to weigh the objective medical evidence nor assign articulated reasons for discrediting the claimant's subjective complaints. (*See* Tr. 117-20; Defendant's Brief at 14-17.) Thus, the ALJ did not err and remand is not required on this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the

party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 11, 2023**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 28, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

22